**MICHAEL E. FARNELL** (Oregon Bar No. 922966)
E-mail:  mfarnell@pfglaw.com
**KRISTOPHER L. KOLTA** (Oregon Bar No. 106442)
E-mail:  kkolta@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Morrison Street
Portland, Oregon  97205
Telephone:    503-222-1812
Facsimile:     503-274-7979

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **12W RPO, LLC,** an Oregon limited liability company; and **GED GALLERY, LLC,** an Oregon limited liability company, | Case No:  _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **AFFILIATED FM INSURANCE COMPANY**, a Rhode Island corporation, and **STEADFAST INSURANCE COMPANY,** a Delaware corporation, | |
| Defendants. | |

## PARTIES

1.

Plaintiff 12W RPO, LLC ("12W") was and is an Oregon limited liability company with its principal place of business in Portland, Multnomah County, Oregon.

2.

Plaintiff GED Gallery LLC ("GED") was and is an Oregon limited liability company with its principal place of business in Portland, Multnomah County, Oregon.

3.

Defendant Affiliated FM Insurance Company ("AFM") was and is, upon information and belief, an insurance company incorporated in Rhode Island with its principal place of business in Rhode Island.  AFM was and is authorized to issue insurance policies in the state of Oregon.

4.

Defendant Steadfast Insurance Company ("Steadfast") was and is, upon information and belief, an insurance company incorporated in Delaware with its principal place of business in Illinois.  Steadfast was and is authorized to issue insurance policies in the state of Oregon.

## JURISDICTION AND VENUE

5.

Jurisdiction is founded on diversity of citizenship and the amount at issue.  Plaintiffs are Oregon LLCs with their principal places of business in Oregon.  As alleged above, defendant insurers are incorporated in and have their principal places of business in other states.  The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  Every issue of law and fact is between citizens of different states.

6.

This Court has personal jurisdiction over defendants because they transacted insurance in Oregon within the meaning of the Oregon Insurance Code, ORS 731.146 *et. seq*., and because the claims giving rise to this coverage lawsuit arose out of risks for which the defendant insurers provided coverage within Oregon and, specifically, Multnomah County.

## THE INSURANCE POLICIES ISSUED BY DEFENDANTS

7.

AFM issued a series of first-party property policies to 12W under which GED is also a named insured, including policy numbers  PC067 and PB955 (collectively, the "AFM Policies").

8.

Steadfast issued policy number GLO 5849447-00 to Hoffman Construction Company ("Hoffman") under which plaintiffs are insureds pursuant to the policy's terms and their

construction contract with Hoffman, which required Hoffman to include 12W and GED as insureds under its liability insurance policies.  This is a Contractor Controlled Insurance Program ("CCIP") policy, providing primary commercial general liability insurance and is referred to herein as the "CCIP Primary Policy."

9.

Steadfast also issued policy number AEC 9141601-00 to Hoffman under which plaintiffs are insureds pursuant to the policy language and their construction contract with Hoffman.  This policy provides the first layer excess coverage in the CCIP, providing follow-form excess general liability insurance, and is referred to herein as the "CCIP Excess Policy."

## COMMON ALLEGATIONS REGARDING DAMAGE TO THE INDIGO

10.

GED served as the developer of The Indigo @ Twelve West ("The Indigo"), a 23-floor, mixed-use apartment and office building located in Portland, Multnomah County, Oregon.

11.

12W is the owner of The Indigo and landlord to The Indigo's residential and commercial tenants.

12.

The Indigo's hot and cold water plumbing systems were constructed with various materials composed of or containing ethylene propylene diene monomer ("EPDM") rubber, some or all of which are designated as "grade E" and recommended for hot water service in a potable water system (collectively "EPDM Materials").  The EPDM Materials included valves, pipe couplings, gaskets and fittings for piping systems, including, but not limited to, butterfly valves, pipe couplings, gaskets and flanges.

13.

The EPDM Materials failed, decomposing, disintegrating, and in instances dissolving into sludge.

/ / /

Page 3 – COMPLAINT
O:\9924001\0017b klk USDC Complaint.doc

14.

Plaintiffs' investigation revealed that the EPDM Materials suffered an unanticipated chemical reaction with Portland's domestic water supply. Specifically, chloramine compounds added to treat Portland's domestic water caused the EPDM materials to, among other things, decompose, disintegrate, and/or dissolve.

15.

The disintegration and dissolution of the EPDM Materials resulted in damage to The Indigo's potable water supply, to the domestic water plumbing systems, and to other property at The Indigo, including damage to both residential and commercial units. Damage to the building's potable water supply obviously presented the specter of harm to building residents and visitors, as well.

16.

Under Oregon's Residential Landlord and Tenant Act ("ORTLA"), 12W, as landlord, had a duty to "maintain the dwelling unit in a habitable condition," including the provision of "[p]lumbing facilities . . .  maintained in good working order" and "[a] water supply. . . [m]aintained so as to provide safe drinking water."  *See* ORS 90.320(b), (c)(D).

17.

Under ORTLA, 12W also had an obligation to provide essential services, specifically an obligation to protect against any "serious threat to the tenant's health, safety or property" and to prevent any conditions that "make[] the dwelling unit unfit for occupancy."

18.

GED was legally obligated to ensure that The Indigo was built in a manner so as not to cause property damage. Further, GED was legally obligated to ensure that The Indigo was built in compliance with the Uniform and International Building Code as adopted in Oregon.

/ / /

19.

To meet plaintiffs' legal obligations and to ensure the safety of residential and commercial tenants and visitors, 12W distributed bottled water to all tenants and promptly investigated and selected the fastest and most efficient means to repair the property damage and restore the safe functionality of The Indigo's plumbing systems.  In timely recognizing and satisfying their legal obligations, plaintiffs minimized their exposure and mitigated their loss.

20.

Repair of the damage at The Indigo included, but was not limited to, the removal and replacement of all EPDM Materials in The Indigo's domestic water system and repair of all property damage associated therewith.  Much of the domestic water system resides in the closed-wall spaces of The Indigo, necessitating damage to and/or destruction of certain building components.  After investigating all available repair options, Plaintiffs' only viable repair option was the replacement in its entirety of The Indigo's plumbing system.

21.

To remedy property damage at The Indigo and avoid bodily injury to persons, plaintiffs have incurred total costs of not less than $4,826,584, without limitation comprised of the following:

    a.      The cost of diagnosing problems in the piping system and developing a scope of repair for the piping system and the common elements;

    b.      The cost to repair damaged property;

    c.      The total cost of a third-party construction manager to furnish architectural services; obtain permits; act as the Owners' representative during the repair work; and document the repair work to ensure that the work complies with, among other things, (i) all applicable industry standards, (ii) the applicable building code, (iii) all applicable laws, ordinances, rules and regulations, (iv) all applicable manufacturers' instructions and specifications, and (v) the plans and specifications;

    d.      Relocation and move-out expenses, and the cost to move and store the tenants' personal belongings during the course of the repair work, and to clean unit interiors;

    e.      Additional cleaning costs and costs to mitigate damage;

    f.      Lost income and extra expense associated with the repair work;

    g.      Expenses in connection with tenants' loss of use of property; and

    h.      Financing and carrying costs.

In addition, 12W has incurred substantial attorney fees in connection with the property damage at The Indigo as a result of defendants' failure to honor their respective coverage obligations. These attorney fees are independent of and in addition to the fees incurred to enforce defendants' coverage obligations. The full extent of plaintiffs' damages will be proven at trial.

## AFM'S POLICIES AND DENIAL OF THE EPDM CLAIM

### 22.

As identified above, Plaintiffs purchased a series of "All Risk" Property Insurance Policies from AFM (the "AFM Policies").

### 23.

The AFM Policies contain a simple, broad insuring agreement whereby AFM promises to cover all risks of physical loss of or damage to covered property, which includes The Indigo and all its component parts. This first party property coverage is aptly described as "All Risk Coverage" and applies unless any and all causes of the subject loss are specifically excluded. Each AFM policy has a limit of $123,510,100.

### 24.

The AFM Policies also provide coverage for losses of business income and extra expense incurred as a result of covered physical loss or damage.

/ / /

Page 6 – COMPLAINT

25.

The AFM Policies' exclusions do not bar coverage for the disintegration, decomposition, or dissolution of the EPDM Materials or the resulting, consequential damage to the plumbing system as a whole.

26.

The AFM Policies' exclusions do not bar coverage for the unanticipated chemical reaction between the EPDM Materials and the chloramine compounds added to Portland's domestic water supply, a reaction resulting in the disintegration, decomposition, and dissolution of the EPDM Materials and causing direct physical loss of or damage to The Indigo's plumbing system.

27.

Plaintiffs submitted the EPDM Materials claim to AFM and requested coverage on or about June 18, 2015.  On or about December 22, 2016, AFM denied the claim.

**THE STEADFAST POLICIES AND STEADFAST'S DENIAL OF THE EPDM CLAIM**

28.

The Steadfast Primary CCIP Policy and Excess CCIP Policy ("the Steadfast Policies") provide liability coverage to plaintiffs for, in relevant part, "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  The Steadfast Policies provide combined limits of $27 million.

29.

"Bodily Injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property."

30.

Plaintiffs tendered their claim to Steadfast on or about February 29, 2016, and requested coverage.  Steadfast has failed to pay the claim.

/ / /

## THE HYDRONIC PIPE CLAIM

31.

On or about February 17, 2016, plaintiffs separately submitted a claim involving The Indigo's hydronic pipe cooling system to AFM, requesting coverage.

32.

On or about May 12, 2016, and before plaintiffs could complete their investigation of the damage to the hydronic pipe and hydronic pipe space, AFM denied coverage.

33.

Through their investigation, plaintiffs' have since discovered that the hydronic pipe was not protected with durable PVC sheeting but rather was encased by permeable plastic sheeting.

34.

Plaintiffs also discovered numerous punctures to the permeable plastic sheeting and insulation encasing the hydronic pipe.

35.

The punctures in the permeable plastic sheeting allowed condensation to collect and in instances pool within the hydronic pipe space.

36.

Plaintiffs discovered the condensation before it led to permanent damage to the hydronic pipe itself.  The insulation surrounding the pipe, however, is a total loss.

37.

The cost to replace the hydronic pipe insulation, including consequential damages, is estimated at $100,000.  The full extent of plaintiffs' damages will be proven at trial.

/ / /

## FIRST CLAIM FOR RELIEF

(BREACH OF CONTRACT AGAINST AFM)

38.

Plaintiffs incorporate and reallege paragraphs 1 through 37 above as if fully set forth herein.

39.

AFM charged, and was paid, substantial premiums in consideration for its promises of insurance coverage.

40.

The AFM Policies are valid and enforceable contracts between AFM and plaintiffs.

41.

Plaintiffs have complied with all material terms, provisions and conditions of the AFM Policies (including any conditions precedent), and/or such terms, provisions and conditions have been waived or are otherwise no longer required due to AFM's conduct in the investigation, adjustment, and/or handling of the claims.

42.

The AFM Policies obligate AFM to pay for all loss incurred by plaintiffs in connection with the The Indigo's plumbing and hydronic pipe systems, together with all associated lost income and extra expense, as alleged in paragraphs 21 and 37.

43.

AFM breached its policies by refusing or otherwise failing to provide coverage as required therein.

44.

As a result of this breach, plaintiffs have been deprived of their insurance protection and benefits due under the AFM Policies in the amounts specified herein.  In addition to these amounts, plaintiffs have suffered consequential damages in the form of, among other things, attorney fees to

protect their interests as against third parties, financing and carrying costs and other damages to be proven at trial.

45.

Plaintiffs are entitled to recover their attorney fees under ORS 742.061.

## SECOND CLAIM FOR RELIEF

### (BREACH OF CONTRACT AGAINST STEADFAST)

46.

Plaintiffs incorporate and reallege paragraphs 1 through 45 above as if fully set forth herein.

47.

Steadfast charged, and was paid, substantial premiums in consideration for its promises of insurance coverage.

48.

The Steadfast Policies are valid and enforceable contracts between Steadfast and plaintiffs.

49.

Plaintiffs have complied with all material terms, provisions and conditions of the Steadfast Policies (including any conditions precedent), and/or such terms, provisions and conditions have been waived or are otherwise no longer required due to Steadfast's conduct in the investigation, adjustment, and/or handling of the claim.

50.

The Steadfast Policies obligate Steadfast to indemnify plaintiffs for all loss incurred in connection with the mitigation and repair of property damage caused by the EPDM Materials and in connection with the avoidance of bodily injury caused by the EPDM Materials, as alleged in paragraph 21, less the amount of $1,024,673.99 for lost rents.

/ / /

Page 10 – COMPLAINT
O:\9924001\0017b klk USDC Complaint.doc

51.

Steadfast breached its policies by refusing or otherwise failing to provide coverage as required therein.

52.

As a result of this breach, plaintiffs have been deprived of their insurance protection and benefits due under the Steadfast Policies in the amounts specified herein.  In addition to these amounts, plaintiffs have suffered consequential damages in the form of, among other things, attorney fees to protect their interests as against third parties, financing and carrying costs and other damages to be proven at trial.

53.

Plaintiffs are entitled to recover their attorney fees under ORS 742.061.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray for judgment as follows:

1.    On Their First Claim for Relief, for an award of damages in an amount to be proven at trial of not less than $5,726,584.

2.    On Their Second Claim for Relief, for an award of damages in an amount to be proven at trial of not less than $4,601,910.

3.    On All Claims for Relief:

    a.    Plaintiffs' costs and disbursements incurred herein;

    b.    Plaintiffs' attorney fees pursuant to ORS 742.061;

    c.    Prejudgment interest at 9% per annum;

    d.    Interest at the maximum legal allowable rate from the date of judgment; and

/ / /

e.      Any other relief the Court deems just and equitable.


DATED this 9th day of January,  2017.




s/ Michael E. Farnell
**Michael E. Farnell**, OSB #922996
**Kristopher L. Kolta**, OSB #106442
**PARSONS FARNELL & GREIN, LLP**
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon  97205
Telephone:  (503) 222-1812
Fax:  (503) 274-7979
E-mail Address:  mfarnell@pfglaw.com
E-mail Address:  kkolta@pfglaw.com
Attorneys for Plaintiffs